All right. Mr. Hayes, good morning. You're reserved two minutes for rebuttal, and you can begin whenever you're ready. Good morning, Your Honor. Tracy Hayes, on behalf of the defendant's appellate, Joseph Amadeo. May it please the Court, Joseph Amadeo's 84-month sentence was both procedurally and substantively unreasonable and must be demanded for resentencing. Mr. Amadeo's case is not an outlier amongst other child pornography cases in respect to any particular egregious facts. So as if to say this is nothing unusual in terms of the facts that this court has seen or even the district court has seen. So, for example, there were 6,000 images. I'm not condoning that other than just to say nothing unusual. Well, let me just ask you just to divide it up for me. Procedurally, I think the argument is, you can correct me if I'm wrong, that the district court procedurally erred by not considering comparator cases. That's the procedural argument? Yes. But during the sentencing, the court specifically talked about comparator cases and believed that they were not, they were different. So you still have your substantive argument, but certainly the district court didn't overlook that factor. It weighed it. It determined that those cases were different than what he had before him. So what, you know, why is that a procedural error if the district court specifically considered the thing you're saying the district court did not consider? Procedurally, Your Honor, there was just, I would argue, sort of a... You just disagree with that. You just disagree with that substantively, which is fine. We have the law on that too. But how could that be procedural error if the district court specifically considered that issue? But it was just, I believe that it was just a mere passing of the cases. All right. So let's focus subtly whether the statistics that you cite are so different from this case that a sentence below the guidelines, because this was a below the guidelines sentence, right? Seven years was below the 97 to 121 months, right? So that this would be a shockingly high sentence compared to other cases. That's essentially what you're arguing to us, right? All right. So let me just ask you about that. The statistics, I think, that you cite are a typical career history category one for this type of conduct would have received, I think, approximately a year lower than that on average. That's right. Putting aside whether a year lower is shockingly, a year difference would be shockingly high, isn't this pretty unusual where someone has a prior conviction for child pornography and got no criminal history points? Usually the sentence, you know, here we've got a 10-year suspended sentence, and usually, as you know, for that type of offense, you certainly would get a sentence that would be sufficient to give you three points and put you in another criminal history category. So I don't think you can tell me, you can point to any case where someone had a prior conviction and remained in criminal history category one, and that to me would be the comparable case, wouldn't it? Not necessarily not here, Your Honor, and here's why. The court has to consider, even if we look at sentencing incrementally, he received a probation period in terms of a sentence in the state in 2011 or 2012. So that was years prior to this case. Next one. We also have to look at his background compared to what we see with other defendants. This is someone that's in San Rodeo who was on the autism spectrum, autistic spectrum disorder. He battled with ADD all of his life. He battled with ASD all of his life. He had other mental health issues in terms of— I know, but the district court, again, considered both of those things that you just cited. The doctor, the district court said he found that your client was on moderate to high risk to reoffend with respect to possession of trial pornography. So he addressed that. And on this issue of not serving jail time on the first one, he said that's a mitigating factor. But then he saw another side of that, which is that even though, you know, whatever issues he had with respect to being on the spectrum, that he had a clear understanding after that conviction of the wrongfulness of his conduct in a concrete and compelling way, and yet did it again. So these are all things the district court considered, right? Yes. But we're now—I believe your question, Your Honor, was comparing that to the other cases. Whether it's in the District of Connecticut, in the circuit, or throughout the country, I believe the court started off with saying the average of the means was 71, 72 months. Here, the sentence was a year and a half, 12 months more. Other than the previous conviction, which he received probation for, here he had—he's still a criminal history warrant. He still had that background. He—we're talking about someone who was on pre-trial release for over a year and was excellent. We're talking about all of that. If we compare that with some of the previous cases that I cited in the initial brief and in the reply brief, we have defendants with not only possession but receipt and distribution cases. We have defendants who had years wrong in terms of five years or even 10 years wrong of this type of activity, that unrelenting activity when they were finally caught. We have defendants who were distributed in these images and videos, who were set up to do these things. And all of those defendants that we cited still received sentences less than they did. So, for example, the receipt sentence in 2012 before Judge Capello, that's in our citing. That person received 51 months. The Guzman-Rangel deal was 108 times 35 months. Again, that was charged for receipt. In another receipt case in 2012 before Judge Hall, it was stored and organized over 100 gigabytes of child pornography, including similar images that were found in Mr. Emmerdale. The Range deal was 210 months to 240 months. He received a 21-month sentence—excuse me, 27-month sentence. I could go on with other individuals, other defendants, such as Mr. Spicer, the 2010 case before Judge Thompson, where he was accessed for 12 years prior to his arrest, 1,200 images, 44 videos. He received a 46-month sentence. That was in the possession case. And, again, I could go on with other cases. That's the type of work that we were expecting from the district court in terms of really wrestling with the facts to avoid the unwarranted type of sentences that we see here. If you could just—again, I haven't gone through all those cases, but any case, give me any case where there was a prior conviction for child pornography, even if the person got no jail time. What's the lowest sentence that they've gotten that would make this a shockingly high sentence? I don't think those cases are in that category, right? I understand the difference potentially between getting jail time or no jail time, but just the mere fact that there was a conviction for the exact same thing. Your Honor, I don't have that. But the only thing I do have in just response, and I know this is not a direct answer, is he was still in criminal history one, as Your Honor has pointed out. So that fact, the fact that he had that previous conviction, that's baked into his criminal history category, as the court has pointed out. That's baked into even what we see in terms of the guideline range. So I understand that the court's concerned with that. I do not—I cannot point to any previous cases where someone has that type of background. All right. But here, Judge, also I ask the court to consider that he was facing a sentence, that he was facing a mandatory remand for five years, which is what we're asking. All right. Thank you, Mr. Hayes. Thank you. You have your two minutes in rebuttal. We'll hear from the government. Mr. Patel. Thank you, Your Honor. Good morning, and may it please the Court, Assistant United States Attorney Sean Patel of the United States. Judge Thompson's below-guideline sentence of 84 months in prison, which is far from the statute for a maximum, is both procedurally and substantively reasonable for Mr. Almedeo, who was convicted on the second crime involving child pornography. With respect to procedural reasonableness, Mr. Almedeo would have to show a plain error. But here, based on his record, there's no error, much less a plain error. This Court will presume, in the absence of record, evidence suggesting otherwise, and that a district court has considered the relevant sentencing factors. Here, there is certainly no record suggesting otherwise. In fact, Judge Thompson very clearly on the record multiple times indicated that he considered the relevant Section 3553A factors, including the need to avoid unwarranted sentencing disparities. With respect to that factor, prior to proposing the sentence, the Court explicitly stated it considered that factor, that it considered the defense papers that raised that argument, and Judge Thompson put on the record that some of the cases raised by Mr. Almedeo were for different events and involved different specifics of this conduct. So, in short, there was no procedural error, plain or otherwise. Moreover, the district court's below-guideline sentence was substantively reasonable. In general, a below-guideline sentence is going to be substantively reasonable in the overwhelming majority of cases. Here, a below-guideline sentence of 84 months was not shockingly high or unsupportable as a matter of law. In reaching the sentence, Judge Thompson, again, considered those Section 3553A factors. It indicated that the most important factors would be specific insurance, protection of the public, as well as the need for the sentence to reflect the very serious nature of the offense. Judge Thompson evaluated multiple aggravating factors, including Mr. Almedeo's prior conviction for child pornography, the fact that he estimated his conduct in the offense at hand, and that the court perceived the serious recidivism risk. The court also evaluated many factors raised by Mr. Almedeo, including mental health diagnoses, physical and medical conditions, the length of time Mr. Almedeo spent on pre-sentence supervision, and the possibility that Mr. Almedeo would have difficulty accessing certain medications while incarcerated. On appeal, Mr. Almedeo was in effect asking his court to re-weight those factors. The law is clear that the weight of those factors is properly to meet the discretion of the sentence. In addition, in contrary to Mr. Almedeo's claims in three, Judge Thompson considered the cautions raised by Court of A. In fact, after tackling the QG 2.2 factors, Judge Thompson determined that the guidance were not particularly The sentence here is not one that even comes close to approaching the statutory maximum. And then finally, Mr. Almedeo's argument that his highly accurate sentences opposed to other defendants under Section QG 2.2, with similar criminal history, also did not suggest an issue with procedural or substantive reasonableness. As has been pointed out by Judge Thompson, the government's brief, the cases of this defendant, Mr. Almedeo, are not true-like comparisons. As many of you will know, two convictions were in the session. Judge Thompson did not proceed. And perhaps most importantly, the cases referenced do not involve defendants who had a previous conviction for child pornography. In any event, for any given set of data points, there will be certain sentences that are above the average. And the fact that one or more courts have opposed to those competing sentences does not make or create a sense in stealing from the other courts. Here, Judge Thompson explained the adequate factors, including Mr. Almedeo's father's conviction, and the legislative sentence. So in sum, Mr. Thornton's sentence was both procedurally and substantively reasonable. If there are any questions, I'm happy to answer them. Otherwise, I will pass this board. All right. Thank you. Mr. Hayes, you have two minutes on rebuttal. Thank you. Your Honor, this is not, as a government service claim, ever reviewed. There was really no instance for it before. I obviously counseled below defense counsel. There was no time or even reason for me to ask the court or to assert any concerns with the sentence at the time. It just didn't seem to make sense. So we proceeded as we did. Just to address certain things, when I'm asking this court, can you weigh the sentencing factors, we're asking the court to or even give more weight to something specific. We're asking this court to set it back so that Judge Thompson, the district court, the sentencing judge, could give the proper review of the request to look at the list of cases or cases nationally within the district, within the circuit, and look at the facts there, compare that with the facts in this case. And they will see that, frankly, the good cases, which is clear, did create that unwarranted scurry of people. We're saying that the court below, district court, failed to balance the proper factors in the first place. There was no issue with the factors that the government indicated in its sentencing papers and even in court orders. We know everything that the district court did in terms of reviewing the factors here. But what they didn't do was, again, wrestle with the factors in terms of the other cases. The district court would have seen that we just didn't list possession cases. We also didn't see cases, distribution cases. We even listed those cases before your honors in terms of the comparative cases. And we're saying that the district court gave that consideration to introduce a little more recursive laws, if you will, and not be full effect for the review that it should have. I can see that my time is up. Thank you for your time. Thank you, Mr. Hayes. Thank you, Mr. Patel. We'll reserve the decision. Have a good day. Thank you. Thank you.